[No. B174711. Second Dist., Div. Eight. May 17, 2005.]

WENDY CORELL, Plaintiff, Cross-defendant, and Appellant, v.
LAW FIRM OF FOX AND FOX et al., Defendants, Cross-complainants,
and Respondents.

COUNSEL

Kosnett & Durchfort and David E. Durchfort for Plaintiff, Cross-defendant, and Appellant.

Law Firm of Fox and Fox, Frank O. Fox and Rick C. Lam for Defendants, Cross-complainants, and Respondents.

OPINION

**COOPER, P. J.**—The "recent period of rapid expansion of arbitration as a dispute resolution mechanism" has engendered a "proliferation of arbitration clauses in attorney retainer agreements." (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 985 [12 Cal.Rptr.3d 287, 88 P.3d 24].) In this case, defendant attorneys included extensive such provisions in their retainer agreement. But after receiving an initial award they deemed unsatisfactory, the attorneys abandoned their trial de novo and dismissed the lawsuit they had brought in order to obtain it. In line with established authority, we hold that the attorneys' conduct accomplished a retraction of their request for trial de novo, and rendered the prior award final and binding.

## FACTS

Plaintiff and cross-defendant Wendy Corell appeals from an order dismissing her action for declaratory relief and damages against her former attorneys, The Law Firm of Fox and Fox and its partners Henry A. Fox and Frank O. Fox (collectively Fox). The order, which also dismissed Fox's cross-complaint for attorney fees, followed the trial court's striking all pleadings in the case, under Code of Civil Procedure section 436, on grounds the claims asserted were all within already established arbitral jurisdiction.

The background is unusual. In December 1999, Corell entered into a retainer agreement for Fox to represent her in a marital dissolution (agreement). The agreement allowed Fox to request a lien for security for its fees. In September 2000, Fox recorded a deed of trust to secure a note for its fees, executed by Corell, against her home.

The agreement, prepared by Fox, provided for arbitration of disputes "with regard to the services performed," including any over attorney fees. Disputes were to be decided by binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association (AAA). With respect to fee disputes, however, the agreement recognized and provided that Corell was entitled to elect either binding or nonbinding arbitration through a bar association, pursuant to Business and Professions Code section 6200 et seq. (mandatory fee arbitration act; MFAA). The agreement provided that if nonbinding arbitration were chosen and Corell or Fox rejected the award, the matter would then proceed to binding arbitration under the AAA rules. The

arbitration provisions repeatedly emphasized that the parties agreed to forgo resort to the courts in resolving their disputes.[1]

Ultimately a fee dispute arose, and Corell requested nonbinding arbitration, which proceeded before the Beverly Hills Bar Association. On February 6, 2003, the arbitrators rendered their award, in an amount substantially less than Fox apparently had sought.

Dissatisfied with the award, Fox on February 28, 2003, commenced an action against Corell in superior court, for breach of contract and common counts, seeking its fees de novo (the fee action). Through counsel, Corell requested that Fox stay the action and proceed with binding arbitration, as the agreement required. Corell then filed in the fee action a petition to compel arbitration (Code Civ. Proc., § 1281.2).

Fox filed opposition to the petition. Fox stated that although it did not object to binding arbitration, it had filed the fee action to request a trial de novo after the nonbinding arbitration, in accordance with Business and Professions Code section 6204, subdivision (c).[2] Fox also claimed that the proper way for Corell to obtain binding arbitration and to stay the action was to file a request for arbitration with the Los Angeles County Bar or State Bar, under Business and Professions Code section 6201, subdivision (b).

Rejecting Fox's last-stated position, the court on April 29, 2003, granted Corell's petition to compel arbitration, and ordered that the binding arbitration be completed within six months, by October 24, 2003. The minutes recite that the court so ruled after the parties were "unable to agree upon the language of referral" to arbitration. The court set a status conference for June 30, 2003.

The arbitration never proceeded. Instead, Fox again insisted that Corell was responsible for commencing the proceedings—before the Los Angeles or California bar—by filing a request for arbitration, presumably under Business

---

[1] A separate paragraph recited: "[Fox] prefers to avoid litigation with [Corell], and State law encourages arbitration of fee disputes. If a dispute arises regarding fees, then [Corell] has the right to request an arbitration of the fee dispute through the Los Angeles County Bar Association, or the State Bar of California."

[2] Business and Professions Code section 6204, subdivision (c) provides that if no action between the parties is pending, a "trial after [nonbinding] arbitration shall be initiated by the commencement of an action . . . within 30 days after mailing of notice of the award." Under Business and Professions Code section 6203, subdivision (b), the originally nonbinding award becomes binding if a trial after arbitration is not requested.

and Professions Code section 6201, subdivision (b), whereas Corell contended that it was up to Fox to initiate arbitration, under the AAA rules.[3] Fox adhered to its position, even though it was Fox that (1) was dissatisfied with the bar association award, (2) had filed for a trial de novo, and (3) was thus the claimant under its own agreement. Nevertheless, Fox went so far as to contend, in a brief prepared for the status conference, that the court should find Corell had waived her right to arbitration by declining to initiate it.

Apparently there was more behind Fox's unwillingness to commence arbitration. At oral argument, Fox represented that it had been unable to initiate the arbitration because it did not know how much of its claimed fees Corell disputed, and thus could not state the amount in controversy. When we suggested that surely Fox knew how much it claimed Corell owed, Fox admitted that the problem had been that the higher the demand, the more it would have to pay to commence the arbitration. In other words, Fox apparently did not want to bear the initial expense of pursuing its claim through the remedial process it had elected and mandated in its agreement.

The status conference was held as scheduled on June 30, 2003, and the court continued it to July 14. On July 11, however, Fox voluntarily dismissed the fee action, without prejudice, thereby precluding the superior court from monitoring the upshot of its order to arbitrate. The status conference was removed from calendar, "as moot."

In November 2003, after the deadline to complete arbitration had expired, Corell commenced the present action, seeking relief from and on account of the trust deed securing Fox's fees. Corell alleged that in July she had twice demanded that Fox furnish a reconveyance, but Fox had failed to do so, notwithstanding that following dismissal of the fee action the deed and note were "void." The complaint also charged that Fox had induced Corell to execute the note and deed of trust "without disclosing the nature of the transaction or advising [Corell] to consult independent counsel." Corell sought declaratory relief and cancellation of the trust deed, as well as damages for failure to reconvey, slander of title, and negligence.

Fox answered, and filed a cross-complaint, seeking attorney fees under the agreement, as it had in the fee action. Corell demurred to the cross-complaint, alleging lack of jurisdiction and failure to state a cause of action. In her

---

[3] Generally, an agreement for arbitration under AAA rules means that the arbitration is to be conducted before that organization. (*Maggio v. Windward Capital Management Co.* (2000) 80 Cal.App.4th 1210, 1214–1215 [96 Cal.Rptr.2d 168]; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (Rutter 2004) ¶ 5:26.10, p. 5-16.)

papers, Corell argued that the cross-complaint had been filed beyond the 30-day period for commencing an action after nonbinding fee arbitration (Bus. & Prof. Code, § 6204, subd. (c)), and that it therefore was barred. Opposing the demurrer, Fox argued that its timely commencement of the fee action had satisfied the statutory requirement.

Following the hearing on the demurrer, the trial court filed a lengthy minute order, ordering that the complaint, answer, and cross-complaint all be stricken, and dismissing the case. Referring first to the contentions on Corell's demurrer, the court opined that by filing the fee action, Fox had timely met the limitation for trial de novo (Bus. & Prof. Code, § 6204, subd. (c)), and that the 30-day limitation period had recommenced when Fox dismissed that action in July 2003. The court then observed that "a party who timely requests a trial de novo and then voluntarily dismisses before trial repudiates their previous election for a trial de novo and is thereafter bound by the dismissal. [Citing *Herbert Hawkins Realtors, Inc. v. Milheiser* (1983) 140 Cal.App.3d 334, 338–339 [189 Cal.Rptr. 450].]" The court ruled, however, that Fox's dismissal should not allow either party to avoid the prior order to arbitrate and proceed with judicial litigation. The court concluded, "As this matter now stands, the controversy presented by this case is within the jurisdiction of the arbitrator. The court, thus, strikes the pleadings in this action as they were not filed in conformity with the laws of this state or an order of the court. [Citing Code Civ. Proc., §§ 435, 436.] . . . [T]he matters presented by the pleadings are not now properly before this court." The court ordered the case dismissed.

Corell noticed this appeal. Fox did not appeal, and as respondent Fox affirmatively defends the dismissal. At oral argument, Corell advised us that Fox had recently recorded a notice of default for the full amount of its claimed fees, and had commenced nonjudicial foreclosure proceedings against Corell's home.

## DISCUSSION

The trial court struck Corell's complaint and dismissed her action on grounds the complaint was "within the jurisdiction of [an] arbitrator" who had not even been chosen or appointed. That situation obtained, largely if not solely, because Fox had refused to commence arbitration, and by dismissal had divested the court that had ordered it of ability to oversee that order. Fox's conduct required a different ruling.[4]

---

[4] In dismissing both the complaint and cross-complaint, the court purported to invoke its authority under Code of Civil Procedure section 436, subdivision (b), to "Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." Neither party challenges the appropriateness of this procedure (although

■ Corell contends that Fox's dismissal of the fee action, by which Fox had sought a trial de novo following the MFAA award with which it was dissatisfied, warranted termination of the de novo proceedings and finality of that award. Corell relies on a case the trial court cited and paraphrased, *Herbert Hawkins Realtors, Inc. v. Milheiser* (1983) 140 Cal.App.3d 334, 338–339 [189 Cal.Rptr. 450] (*Hawkins*). That case had been referred to arbitration under the Judicial Arbitration Act (Code Civ. Proc., § 1141.10 et seq.). After suffering an adverse award, the plaintiff requested a trial de novo (*id.*, § 1141.20), but before it could be held, the plaintiff voluntarily dismissed the action without prejudice. On appeal, however, the court opined that to allow such a dismissal would defeat the legislative purpose of expediting proceedings on certain smaller claims, and would "promot[e] mischievous lawyering." (*Hawkins, supra,* at p. 339.) Accordingly, the court held, "a party is not entitled to a voluntary dismissal without prejudice within the judicial arbitration setting merely to avoid an unfavorable arbitration award." (*Id.* at p. 340, fn. omitted.) Instead, the voluntary dismissal would be treated as a repudiation of the election for trial de novo, with the consequence that the award would become final according to statute (Code Civ. Proc., § 1141.20, subd. (a)). (*Hawkins*, at pp. 340–341.)

■ The holding and outcome in *Hawkins, supra,* 140 Cal.App.3d 334, have been followed in other decisions (see *Calderon v. Kane* (1995) 36 Cal.App.4th 1663, 1666–1667 [43 Cal.Rptr.2d 480]), and indeed have applied where the losing plaintiff attempted to dismiss voluntarily *with* prejudice. (*Kelley v. Bredelis* (1996) 45 Cal.App.4th 1819, 1824–1828 [53 Cal.Rptr.2d 536].) We believe they are also apposite here, even though the present award and request for trial de novo arose in the context of MFAA arbitration under the Business and Professions Code rather than judicial arbitration under the Code of Civil Procedure. Like judicial arbitration, MFAA arbitration subserves a legislative and public purpose to apply the relatively informal and inexpensive arbitral process to a class of disputes whose nature merits such facility. (See *Aguilar v. Lerner, supra,* 32 Cal.4th at p. 983.) And while both systems allow for a trial de novo after an award, both also provide for finality of the award if such further action is not promptly initiated (within 30 days). (Bus. & Prof. Code, § 6203, subd. (b); Code Civ. Proc., § 1141.20, subd. (a).) In both cases, therefore, abandonment of de novo proceedings by the party

---

Corell complains briefly about lack of notice). We therefore do not pursue whether this statute actually authorizes spontaneously striking a complaint or cross-complaint because of legal insufficiency or jurisdictional defect (see *Lodi v. Lodi* (1985) 173 Cal.App.3d 628, 630–631 [219 Cal.Rptr. 116]), or whether on the other hand such deficiencies must be raised by demurrer (see *Warren v. Atchison, T. & S. F. Ry. Co.* (1971) 19 Cal.App.3d 24, 41 [96 Cal.Rptr. 317]).

that has invoked them to supersede the award may well be treated as a retraction of that rejection of the award, rather than as effecting a "mischievous" (*Hawkins, supra,* 140 Cal.App.3d at p. 339) escape from it.

Whether or not this result should follow in all similar cases, it is appropriate in this one, as evidenced by the hollowness of Fox's effort to avoid *Hawkins, supra,* 140 Cal.App.3d 334. Fox admits that its "only reason for filing the [fee] action was to be able to file a trial de novo to reject the arbitration award." But Fox claims that it dismissed the action in order "to proceed in binding arbitration," and in the belief "that no further judicial action would be necessary." Fox's accounting of its actions is incredible.

Fox never proceeded with the binding arbitration that its agreement called for. Fox opposed Corell's petition to compel that arbitration, and after it was granted Fox did not proceed to arbitration, apparently because it did not want to pay the provisional charges for asserting its claim. Even after dismissing its fee action, Fox continued to abstain from arbitration, allowing the original six-month deadline to pass. And when Corell filed her present complaint, Fox did not challenge it or seek to stay the action on grounds it belonged in arbitration (see Code Civ. Proc., § 1281.4); instead, in violation of its own agreement, Fox reasserted as a cross-complaint the very fee claim that had been ordered arbitrated. As for the lack of "further judicial action," apart from the normally retained judicial functions that follow an order to arbitrate (see *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487 [35 Cal.Rptr.2d 4]), Fox's dismissal occurred just before—and pretermitted—a further status conference about the unarbitrated state of the case.

In sum, Fox's dismissal of the fee action, and its conduct thereafter, reflect an attempted evasion of both the mandatory fee arbitration award and the arbitral process as a whole. As in *Hawkins, supra,* 140 Cal.App.3d 334, by that dismissal Fox repudiated its request for a trial de novo. The February 6, 2003 award therefore became final and binding, as provided by Business and Professions Code section 6203, subdivision (b).

From the foregoing it follows that the dismissal of Corell's suit must be reversed, because the arbitration to which the court believed it to be relegated no longer exists (assuming it ever did). On the other hand, the dismissal of the cross-complaint for fees must be affirmed, not only because it stands unchallenged here, but also because the now binding MFAA award bars pursuit of additional fees by Fox.

## DISPOSITION

The order of dismissal is reversed with respect to the complaint, and affirmed with respect to the cross-complaint. Corell shall recover costs.

Rubin, J., and Boland, J., concurred.